## City of Pana v. Mary J. Taylor.

1. MUNICIPAL CORPORATIONS—*Duty to Keep Sidewalks in Repair.*— It is the duty of municipal corporations to use reasonable care and diligence to keep its sidewalks in a reasonably safe condition, and if a person suffers an injury by reason of neglect of such duty, while in the exercise of reasonable care and caution, the corporation is liable.

**Memorandum.**—Action for personal injuries. In the Circuit Court of Christian County; the Hon. JACOB FOUKE, Judge, presiding. Declaration in case; plea of the general issue; trial by jury; verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the May term, 1894, and affirmed. Opinion filed October 29, 1894.

E. A. HUMPHRIES, JR., J. E. HOGAN and PALMER, SHUTT & DRENNAN, attorneys for appellant.

J. C. McQUIGG and J. C. McBRIDE, attorneys for appellee

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

The judgment below was for $450, upon a verdict for damages sustained by appellee from a fall caused by an alleged defect in Jefferson street of the city. This defect was a hole " of the depth of, to wit, ten inches, and of the width of, to wit, sixteen inches, * * * in and upon said street, and near a pathway used for travel by foot-passengers;" and the negligence charged was in suffering and permitting it to be and remain there, with notice of such defect, for six months prior to and until the occurrence of the injury complained of, and without sufficient light by which to see it at night.

Though the trial was upon the general issue, it was not denied that on the 30th of April, 1893, and for six months continuously prior thereto, there was substantially such a hole, located as alleged; that between nine and ten o'clock of that night, which was then misting and very dark, appellee, on her return from a religious meeting to her home by the usual route, stepped into it and thereby fell, sustaining damages to the amount found; and that there was then no artificial light sufficient to enable her to see it. These facts were fully proven.

It further appears that this hole, left like others by the removal of an electric light pole, was on the north side of Jefferson street, which ran east and west, and some two hundred feet or more east of Cedar street, which was the first cross-street west. At one of the corners was the nearest

street light, which was too feeble to show the defect in question—between two and three hundred feet distant—even in a fair starlight night.   The main business part of the city, and the hall in which the religious meeting referred to was held, were west of Cedar street, but there were many residences east of it.   Jefferson street had been opened and used for twenty years.   It was graded in the usual manner, with slight ditches or gutters about six feet from the street lines, leaving the space between them for sidewalks, over which from one hundred and fifty to two hundred and fifty persons passed daily, and by night as well as by day.   On the south side, from Cedar street east along the first four lots, was a plank sidewalk, but no further.   There was none on the north side; but the space between the gutter and the north line of the street was level, and a strip in the middle, two or three feet wide, was well beaten by travel. The hole in question extended from the gutter some five or six inches into the elevated space north of it, and had been partially filled, but was still ten or twelve inches in depth, and almost directly opposite the east end of the plank walk on the south side.   Pedestrians going east on Jefferson from Cedar generally took the plank walk as far as it went and then crossed over to the north side in a dry time by a path angling eastward, but when it was wet by the shortest line, directly across, to lessen the distance through the mud. The hole was between the northern *termini* of these paths.

Appellee's residence was east of this point.   On the evening in question, after she had gone to the meeting with her husband and daughters, it came on to rain, and when they returned it was misting heavily and very dark.   They returned by the way of Cedar and Jefferson streets, which was the usual route, taking the plank walk on the latter to its east end and there crossing separately and by somewhat different lines to the north side.   Mud and darkness made undistinguishable whatever path or paths there had been. Appellee crossed last.

She was fifty-six years of age and was well acquainted with the locality, having passed and re-passed it very fre-

quently during a residence of about two years in the neigh-
borhood. She had often seen this hole during six or eight
months and knew about where it was with reference to
these crossing paths. But on this occasion she did not and
could not see it. She did not know and could not see
whether she crossed directly or not. She was in the mud,
and according to her statement, aimed to get out of it and
across the street "the best she could" with nothing by
which to see except an occasional flash of lightning. Hav-
ing reached the north sidewalk she turned east and almost
immediately stepped upon the edge of the hole with her
right foot, which unavoidably slipped in and went to the
bottom. She fell with her weight upon her right arm,
breaking her wrist and doing other injury which caused
great pain and permanent disability.

Of the errors assigned two only are urged in the argu-
ment; that the verdict was against the weight of the evi-
dence and that the instructions given for plaintiff were
improper.

We are satisfied that the evidence abundantly sustains the
foregoing statement of the facts in every particular and dis-
closes nothing which at all modifies their legal effect. In-
deed no attempt at contradiction was made except as to the
exact location of the hole, as to which the difference was
but a matter of inches. Some witnesses placed it right in
the gutter and so wholly but barely outside of the six foot
space appropriated for use as a sidewalk, though it would
seem that an electric light pole so placed would have
dammed such a gutter and flooded both sidewalk and wagon
way, and that the hole left by its removal would have been
long before that filled up by the drifting dust and washings
of six or eight months. But in our judgment a clear pre-
ponderance of the positive evidence, confirmed by the cir-
cumstances, shows it was north of the bottom of the gutter
and took in a part of the sidewalk. We are further of
opinion that this difference is immaterial. It is said that
the hole was no deeper or more dangerous than an ordinary
curbstone, and the suggestion is that the case is as if a per-

son in a dark night should by a misstep fall from such a curbstone. The palpable difference is that such a curbstone is not a defect in the street and such a hole is, whether it be in a sidewalk, gutter or midstreet. Appellee had a right, with due care, to cross the street where she did, and if in so doing she was hurt by reason of such a defect negligently left in it by the city, she was entitled to recover for the damages sustained. We find in the record no evidence of any want of ordinary care on her part, but quite enough to warrant the finding of culpable negligence on that of the city. The verdict was so clearly right that error in instructions, sufficient to defeat it, must be singularly gross.

Complaint is made of the first, second, third, fifth, eighth and tenth, of those given for the plaintiff. These objections are all founded on familiar rules of law, but we find that each error complained of is in this case either immaterial, inapplicable or fairly obviated.

Thus it is said, that the first and second authorize a recovery for injury by a defect in the sidewalk, without restriction to the particular defect alleged. But other instructions on both sides, refer expressly and solely to the hole, and there is no evidence pointing to any other. The jury therefore could not have been misled on that question.

The third begins with the assertion that it was the defendant's duty " to keep in reasonably safe condition its sidewalks within its corporate limits;" which is too broad; but the instruction is comprised in a single sentence, and concludes with the declaration of its liability for the injury to plaintiff by the defect if she exercised proper care, and further, " provided the defendant, by the exercise of reasonable diligence, could have ascertained such defect and repaired the same," which properly qualified it.

By the fifth the jury were authorized to consider, in connection with the other facts, the condition of the street light furnished by the city, with reference to the question of negligence. That was proper. City of Freeport v. Isbell, 83 Ill. 443.

The eighth instructs the jury, in substance, that if they

find every material fact alleged in the declaration (reciting them and including negligence) proved as alleged, their verdict should be for the plaintiff. It is said this makes negligence a question of law and invades the province of the jury. We hold it does not. The tenth is a statement of the rule, if the injury was the effect of the defect and accident combined, and in our opinion is correct, being distinguished from the case cited (3 App. 414) by the qualification, "provided the jury believes from the evidence that the city authorities were guilty of negligence in not remedying such defect," the omission of which from the instruction there considered was its only fault. We may observe, however, that we do not clearly see any element of accident in this case, though the defendant also asked and got an instruction upon the same point. The eleventh is in substance and almost *verbatim* like the eighth, already noticed. Ten were given for the city as asked, which fully presented all the law contended for on its behalf. Perceiving no material error in the record, the judgment will be affirmed.